NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BENITO LUNA GARCIA and MAGDA VILLEDA-LICONA, as guardians ad litem for minor J.L., <br><br> Plaintiff, <br><br> v. <br><br> NORTH BRUNSWICK PUBLIC SCHOOLS *et al.*, <br><br> Defendants. | Civ. No. 20-1031 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Dismiss filed by Defendants North Brunswick Board of Education ("North Brunswick BOE"), Jonathan Ponds, Debbie Drucker, and Karin Vecchio (collectively, "Moving Defendants"). (ECF No. 6.) Benito Luna Garcia and Magda Villeda-Licona, guardians ad litem for Plaintiff J.L. ("Plaintiff"), oppose. (ECF No. 8.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Moving Defendants' Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

**I.   Factual Background**

This case arises out of two teachers' alleged punishment of a kindergarten student. (*See* Compl. ¶¶ 1–8, ECF No. 1.) During the 2014–15 school year, J.L. was a kindergartener at

Parsons Elementary School ("Parsons") in North Brunswick, New Jersey. (*Id.* ¶¶ 2, 15.) Prior to his enrollment at Parsons, J.L. had been diagnosed with learning disabilities and identified as having special needs (*id*. ¶ 3), but J.L. was placed in a classroom alongside students without learning disabilities under the supervision of two teachers, Defendants Debbie Drucker and Karin Vecchio (*id.* ¶¶ 4, 20).[1]

Plaintiff alleges that Defendants Drucker and Vecchio repeatedly locked J.L. alone in a small bathroom as a means of punishment. (*Id.* ¶ 20.)[2] Despite J.L.'s crying and pleas for help, Defendants Drucker and Vecchio allegedly left J.L. in the bathroom for extended periods of time. (*Id.* ¶¶ 5–6.) At an unspecified point in time, Defendants Drucker and Vecchio ostensibly advised Benito Luna Garcia, J.L.'s father, that he should employ the same tactics at home to "control" J.L. (*Id.* ¶ 40.) The teachers' conduct was eventually brought to the attention of Defendant Jonathan Ponds, the principal of Parsons. (*Id.* ¶ 7.) Defendant Ponds visited the home of J.L.'s parents, Benito Luna Garcia and Magda Villeda-Licona, to apologize. (*Id.* ¶ 34.) Nobody reported the incidents to "any hierarchy of authority" or to law enforcement officials for several years after the incidents occurred. (*Id.* ¶¶ 38–39.)

## II.    Procedural History

Plaintiff filed the Complaint on January 3, 2020. (ECF No. 1.) Plaintiff alleges eight counts: (1) violations of the Fourteenth Amendment under 42 U.S.C. § 1983 by all Defendants (Compl. ¶¶ 47–65); (2) violations of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 *et seq.*, by all Defendants (*id.* ¶¶ 66–70); (3) battery by Defendants Drucker and

---

[1] The Complaint contains two paragraphs labeled paragraph 20. This citation refers to the second paragraph 20.
[2] This citation refers to the second paragraph 20.

2

Vecchio (*id.* ¶¶ 71–77); (4) assault by Defendants Drucker and Vecchio (*id.* ¶¶ 78–84); (5) false imprisonment by Defendants Drucker and Vecchio (*id.* ¶¶ 85–91); (6) intentional infliction of emotional distress by all Defendants (*id.* ¶¶ 92–98); (7) negligent infliction of emotional distress by Defendants Drucker, Vecchio, and Ponds (*id.* ¶¶ 99–105); and (8) negligence by all Defendants (*id.* ¶¶ 106–11). Plaintiff seeks compensatory damages in an amount no less than $10 million. (*Id.* ¶ 111.)

On April 10, 2020, Moving Defendants filed a Motion to Dismiss, seeking to dismiss Count 1 against Defendant North Brunswick BOE, Count 2 against all Defendants, Count 6 against Defendant North Brunswick BOE, Count 7 against all Defendants, and Count 8 against all Defendants. (Mot. at 1–2, ECF No. 6.) Plaintiff filed an Opposition (ECF No. 8), and Moving Defendants filed a Reply (ECF No. 9). Moving Defendants' Motion to Dismiss is presently before the Court.

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*,

3

578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Third, the court must determine whether the facts "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563 (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler*, 578 F.3d at 211. A complaint that does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

I.    **Count 1: Section 1983**

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Id.* (citing *Monell*, 436 U.S. at 690–91).

Where the policy or custom at issue concerns a failure of the municipality to train or supervise employees, municipal liability under § 1983 "requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Moreover, the deficiencies in a municipality's training program must be the "moving force" behind the injuries. *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 125 (3d Cir. 2003) (quoting *Canton*, 489 U.S. at 389; *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 405 (1997)). When failures to train and/or supervise form the basis of a § 1983 claim against a municipality, "[a] plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of

employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cty.*, 520 U.S. at 409). However, deliberate indifference can be established absent such a pattern where, "in light of the duties assigned to specific . . . employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [municipal] policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390; *see also Connick*, 563 U.S. at 63.

Plaintiff brings a § 1983 claim against all Defendants for violation of Plaintiff's Fourteenth Amendment right "to be free from physical and emotional abuse by public school employees." (Compl. ¶ 49.) Plaintiff appears to offer two theories of municipal liability. First, Plaintiff alleges that Defendants North Brunswick BOE, North Brunswick Public Schools, and Parsons Elementary (collectively, the "Municipal Defendants") violated Plaintiff's rights "by acting pursuant to their official municipal policy and custom." (*Id.* ¶ 56.) Second, Plaintiff contends that the Municipal Defendants failed to supervise and train their employees. (*Id.* ¶ 59.) The present Motion seeks to dismiss Count 1 of the Complaint against Defendant North Brunswick BOE only. (Mot. at 2.)

    A.    *Policy or Custom*

Plaintiff has failed to state a claim that Defendants Drucker, Vecchio, and Ponds acted

pursuant to any policy of Defendant North Brunswick BOE. "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (citations and internal quotations omitted).[3] Plaintiff has not stated facts suggesting that any policy was the moving force behind Plaintiff's injuries. In fact, Plaintiff argues that Defendants Drucker, Vecchio, and Pond *violated* policies of Defendant North Brunswick BOE regulating pupil discipline; prohibiting harassment, intimidation, and bullying; requiring principals to investigate acts of harassment, intimidation, and bullying; and mandating reporting of child abuse and neglect. (*See* Compl. ¶ 41.)

Moreover, Plaintiff has failed to state a claim that Defendants Drucker, Vecchio, and Ponds acted pursuant to any custom of Defendant North Brunswick BOE. "Custom . . . can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Wright v. City of Phila.*, 685 F. App'x 142, 146–47 (3d Cir. 2017) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "Custom stems from policymakers' 'acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Plaintiff has not alleged facts suggesting that Defendant North Brunswick BOE acquiesced to any longstanding practice or custom of student punishment or abuse. Plaintiff's submission that Defendants Drucker and Vecchio repeatedly confined J.L. does not amount to acquiescence. Defendant

---

[3] "A 'policymaker' is an 'official [who] has final, unreviewable discretion to make a decision or take an action.'" *Hargrave v. Cty. of Atl.*, 262 F. Supp. 2d 393, 443 (D.N.J. 2003) (alteration in original) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990)).

North Brunswick BOE purportedly did not learn about the incidents until years after they occurred, and Plaintiff has not suggested that other Parsons students had been punished similarly in the past. Therefore, Defendants Drucker, Vecchio, and Ponds were not acting according to any policy or custom of Defendant North Brunswick BOE.

B.     *Failure to Train and Supervise*

Plaintiff has not alleged facts that reasonably indicate a pattern of similar constitutional violations by untrained employees. Although Plaintiff alleges that Defendants Drucker and Vecchio repeatedly punished J.L. by locking him in a bathroom (Compl. ¶¶ 5, 7, 20), the Complaint does not indicate that teachers at Parsons had previously punished other students in a similar manner, nor that Defendant North Brunswick BOE knew about any punishment of J.L. or other students, (*see id.* ¶ 39). Therefore, any theory that a pattern of similar constitutional violations amounted to deliberate indifference by Defendant North Brunswick BOE is unavailing.

Moreover, Plaintiff has not alleged facts plausibly suggesting that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that Defendant North Brunswick BOE could reasonably be considered deliberately indifferent. *See Canton*, 489 U.S. at 390 n.10 (noting that, if a city hypothetically armed its police officers and deployed them to arrest fleeing felons without training the officers on the constitutional limitations on the use of deadly force, the city would be deliberately indifferent to obvious consequences of its failure to train); *Connick*, 563 U.S. at 64–68 (concluding that, because prosecutors are trained in the law and ethically bound to perform legal research when faced with uncertainties, *Brady* violations are not an "obvious consequence" of failing to provide prosecutors with formal, in-house training); *Christopher v. Nestlerode*, 240 F.

7

App'x 481, 490 (3d Cir. 2007) (quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992)) (explaining that, to demonstrate the obviousness of the need for more or different training, "the plaintiff must show that the situation . . . presents the employee with a difficult choice of the sort that training or supervision will make less difficult"). Becoming a kindergarten teacher, like becoming a prosecutor, requires extensive training. Plaintiff has not alleged that, as in *Canton*'s untrained police officer hypothetical, Defendants Drucker, Vecchio, and Ponds received *no* training. *See Connick*, 563 U.S. at 67 (distinguishing prosecutors' *Brady* violations from *Canton*'s untrained police officer hypothetical in part on this ground). Moreover, locking students in bathrooms as punishment does not involve the kind of difficult decisionmaking that additional or different training would render less difficult. Accordingly, Plaintiff has failed to state a claim that Defendant North Brunswick BOE was deliberately indifferent to his constitutional rights.

Plaintiff argues that his injuries could have been avoided if the municipality had a different training program. (*Id.* ¶ 37.) Mere allegations that an improved training program could have prevented Plaintiff's injuries, however, cannot form the sole basis of a municipal liability claim based on failure to train. *See Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."); *Grazier*, 328 F.3d at 125 (explaining that the scope of failure-to-train liability is particularly narrow where plaintiffs "merely allege that a different training program than the one in place would have been more effective"). Therefore, the Court dismisses Count 1 of the Complaint against Defendant North Brunswick BOE only.

## II.   Count 2: New Jersey Civil Rights Act

Plaintiff brings an NJCRA claim against all Defendants. (Compl. ¶¶ 66–70.) The NJCRA states, in pertinent part,

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of [New Jersey] . . . may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2(c). "The NJCRA is interpreted as analogous to § 1983." *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (citing *Rezem Family Assocs., LP v. Borough of Millstone*, 30 A.3d 1061, 1067 (N.J. Super. Ct. App. Div. 2011)).

Moving Defendants argue that the Court should dismiss Plaintiff's NJCRA claim because Plaintiff has failed to identify the specific constitutional provisions that Defendants allegedly violated. (Defs.' Br. at 10–11, ECF No. 6-1.) In the Complaint, Plaintiff mentions that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and provisions of the Constitution of the State of New Jersey." (Compl. ¶ 28.) In Count 1, Plaintiff's § 1983 claim, Plaintiff alleges that Defendants violated "Plaintiff's Fourteenth Amendment right (and such right under the New Jersey Constitution) to be free from physical and emotional abuse by public school employees." (*Id.* ¶ 49.) Plaintiff, however, fails to identify which specific constitutional provisions form the basis of Plaintiff's NJCRA claim in Count 2.

This Court has concluded that a failure to indicate the specific constitutional right underlying an NJCRA claim warrants dismissal. *See Celestine v. Foley*, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010) (dismissing the plaintiff's NJCRA claim because he failed to identify which specific constitutional provisions the defendants allegedly violated, even though other

9

counts of the complaint alleged constitutional violations). Where plaintiffs have "clearly intended for their NJCRA claims to be coextensive" with their other claims, this Court has declined to dismiss NJCRA claims solely for failure to indicate the specific constitutional right. *See Seidle v. Neptune Twp.*, 2019 WL 5685731, at *17 (D.N.J. Oct. 31, 2019) (declining to dismiss the plaintiffs' NJCRA claims solely for failing to specify the underlying constitutional violation where the complaint explicitly stated that the factual allegations supporting the plaintiffs' § 1983 claim also supported the plaintiffs' NJCRA claim), *vacated in part on other grounds*, 2020 WL 4349901 (D.N.J. July 29, 2020). On the face of the Complaint, Plaintiff did not clearly intend for the constitutional violation forming the basis of his § 1983 claim also to form the basis of his NJCRA claim. Therefore, the Court dismisses Count 2 of the Complaint against all Defendants.

### III.  Count 6: Intentional Infliction of Emotional Distress

Plaintiff brings an intentional infliction of emotional distress claim against all Defendants, but in Count 6, Plaintiff only discusses the actions of Defendants Drucker and Vecchio. (*See* Compl. ¶¶ 92–98.) To the extent that Plaintiff alleges that Defendant North Brunswick BOE directly engaged in conduct amounting to intentional infliction of emotional distress, Plaintiff has failed to allege sufficient facts to state a claim against Defendant North Brunswick BOE.

To the extent that Plaintiff seeks to hold Defendant North Brunswick BOE vicariously liable for intentional infliction of emotional distress caused by Defendants Drucker and Vecchio, that theory of liability is precluded under New Jersey law. Under the New Jersey Tort Claims Act ("NJTCA"), "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-

10. Intentional or reckless conduct is an element of intentional infliction of emotional distress. *See DeAngelis v. Hill*, 847 A.2d 1261, 1272 (N.J. 2004) (citation omitted); *Ward v. Barnes*, 545 F. Supp. 2d 400, 412 (D.N.J. 2008). Therefore, under the NJTCA, Defendant North Brunswick BOE is not liable for any intentional infliction of emotional distress caused by Defendants Drucker or Vecchio. *See Ward*, 545 F. Supp. 2d at 420–21 (concluding that "there is no legal basis for permitting respondeat superior liability to public entities on the theor[y] of . . . intentional infliction of emotional distress," an act that "require[s] 'actual malicious or willful misconduct'"). Therefore, the Court dismisses Count 6 of the Complaint against Defendant North Brunswick BOE only.

**IV.     Counts 7 and 8: Negligent Infliction of Emotional Distress and Negligence**

Count 7 alleges negligent infliction of emotional distress against Defendants Drucker, Vecchio, and Ponds. (Compl. ¶¶ 99–105.) Count 8 alleges negligence against all Defendants. (*Id.* ¶¶ 106–11.) The NJTCA states,

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. Stat. Ann. § 59:9-2(d). Emotional distress can constitute "pain and suffering" under the NJTCA. *Ayers v. Jackson Twp.*, 525 A.2d 287, 297 (N.J. 1987).

Moving Defendants submit that Plaintiff has not alleged that his medical treatment expenses, if any, exceed $3,600. (Defs.' Br. at 19.) The cases cited by Moving Defendants to support dismissal, however, were decided at the summary-judgment stage. *See J.H. v. Mercer Cty. Youth Det. Ctr.*, 930 A.2d 1223, 1235 (N.J. Super. Ct. App. Div. 2007); *Estate of Del Rosario v. Paterson Police Dep't*, 2020 WL 373354, at *8–9 (D.N.J. Jan. 23, 2020). Without the

11

benefit of discovery, dismissal of Plaintiff's negligence claims would be premature at this juncture. Accordingly, the Court denies Moving Defendants' Motion to Dismiss to the extent that it seeks dismissal of Counts 7 and 8.

**V.     Leave to Amend**

Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). The Court grants Plaintiff leave to amend the Complaint to cure any deficiencies within fourteen (14) days of the entry of the Court's accompanying Order.

## **CONCLUSION**

For the foregoing reasons, Moving Defendants' Motion to Dismiss (ECF No. 6) is granted in part and denied in part. An appropriate Order will follow. Plaintiff is granted leave to amend the Complaint within fourteen (14) days of the entry of the Court's Order.

Date: <u>September 1, 2020</u>                              */s/ Anne E. Thompson*
                                                            ANNE E. THOMPSON, U.S.D.J.

12